# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re<br><br>**CHARLES RIVER PRESS LITHOGRAPHY, INC.,**<br><br>      **Debtor**<br><br>---<br><br>**DONALD R. LASSMAN, as he is CHAPTER 7 TRUSTEE,**<br><br>      **Plaintiff**<br><br>**v.**<br><br>**HOLLIS MEDDINGS GROUP, INC., and JOSEPH MEDDINGS,**<br><br>      **Defendants** | **Chapter 7**<br>**Case No. 03-20352-RS**<br><br><br><br><br><br><br><br>**Adversary Proceeding**<br>**No. 06-1036** |

## MEMORANDUM OF DECISION AND ORDER ON
## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

  By his complaint in this adversary proceeding, Donald Lassman ("the Trustee"), as trustee in the Chapter 7 case of Charles River Press Lithography, Inc. ("the Debtor"), asserts nine counts against Hollis Meddings Group, Inc. ("HMG"), a workout consultant whom the Debtor retained prepetition, and against Joseph Meddings ("Meddings"), a vice-president of HMG.  By the various counts, the Trustee seeks to recover $160,000 paid by the Debtor to HMG for its services in the year prior to the commencement of this bankruptcy case and a $20,000 prepetition retainer for postpetition services.  The adversary proceeding is before the Court on the Defendants' motion for summary judgment as to seven of the nine counts.

**Background and Procedural History**

The Debtor operated a commercial printing business. In late 2001, it began experiencing financial difficulties and, upon the recommendation of its lender, Citizens Bank, sought out a turn-around consultant. Through its president, Frank Nappa, the Debtor entered into an engagement agreement with HMG, a corporation that provides turn-around consulting services to ailing businesses.

The Debtor ceased its printing operations in early November 2003. On December 18, 2003, certain petitioning creditors filed an involuntary petition against the Debtor under § 303 of the Bankruptcy Code. On January 13, 2004, when the Debtor had not answered the involuntary petition, the Court entered an order for relief against the Debtor under Chapter 7 of the Bankruptcy Code. Three days later, Donald Lassman was appointed trustee in the case, and he continues to serve in that capacity.

During the twelve months immediately preceding the filing of the involuntary petition, the Debtor made twenty-nine payments, totaling approximately $160,000.00, to HMG for services that it had previously rendered. In addition, on December 5, 2003, the Debtor, anticipating the filing of an involuntary petition against it, paid to HMG a $20,000 retainer for services to be performed for the Debtor after the bankruptcy filing.

On January 12, 2006, the Trustee filed the complaint commencing this adversary proceeding. The complaint states nine counts, and each is asserted against both defendants: one under 11 U.S.C. § 547(b) for recovery of preferential transfers aggregating approximately $71,000 within the ninety days before the commencement of the bankruptcy case; a second under 11 U.S.C. § 547(b) for recovery of preferential transfers made within one year before the filing, on the theory that HMG was an insider of the Debtor; three counts for recovery of the

payments as fraudulent transfers under 11 U.S.C. § 548 and, by his power to exercise certain creditors' rights of avoidance under 11 U.S.C. § 544(b), under Massachusetts G.L. c. 109A; one for breach of contract; one for violation of Massachusetts G.L. c 93A; one under 11 U.S.C. § 542 for turnover of the $20,000 retainer as property of the estate; and one under 11 U.S.C. § 549 for recovery of the $20,000 retainer as an unauthorized postpetition transfer of property of the estate. The Defendants oppose each count and do not consent to this Court's adjudicating those that it contends are not core proceedings: the counts for breach of contract and for violation of c. 93A.

By the present motion for partial summary judgment, the defendants seeks judgment on all counts insofar as they are asserted against Joseph Meddings individually, and they seek summary judgment on seven of the nine counts against HMG.

**Summary Judgment Standard**

A party is entitled to summary judgment only upon a showing that there is no genuine issue of material fact and that, on the uncontroverted facts, the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

Here, the Defendants would not bear the burden of proof at trial except on their affirmative defense to the preference counts. Where the moving party would not bear the burden of proof at trial, the movant's initial burden is to demonstrate or point out a lack of evidence to support at least one essential element of the opposing party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). The burden then shifts to the opposing party to adduce such evidence on each of the disputed elements as at trial would be sufficient to withstand a motion for directed verdict. *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment will enter for the movant if the party bearing the burden of proof fails to establish the existence of an

element essential to its case.  *Celotex Corp. v. Catrett*, 477 U.S. at 322-323; *In re Varrasso*, 37 F.3d 760, 763 n.1 (1st Cir. 1994).

Where the burden of proof at trial would fall on the party seeking summary judgment, as it would with respect to the affirmative defense to the preference counts, that party must support its motion with evidence—in the form of affidavits, admissions, depositions, answers to interrogatories, and the like—as to each essential element of its cause of action.  The evidence must be such as would permit the movant at trial to withstand a motion for directed verdict under FED. R. CIV. P. 50(a).  *Anderson v Liberty Lobby, Inc.*, *supra*.  If the motion is properly supported, the burden shifts to the adverse party to submit evidence demonstrating the existence of a genuine issue as to at least one material fact.  If the adverse party does not so respond, "summary judgment, if appropriate, shall be entered against the adverse party." FED. R. CIV. P. 56(e); *Jaroma v. Massey*, 873 F.2d 17, 20 (1st Cir. 1989).

**<u>Count I</u>**

In Count I, the Trustee seeks under 11 U.S.C. § 547(b) to avoid and recover the value of transfers that occurred within ninety days before the filing of the involuntary petition as preferential transfers.  The defendants seek summary judgment on the basis of an affirmative defense, the "contemporaneous exchange for new value" defense set forth at § 547(c)(1).  Under that defense, the trustee may not avoid a transfer under § 547

> (1) to the extent that the transfer was—
>
>> (A) intended by the debtor and the creditor to or for whose benefit the transfer was made to be a contemporaneous exchange for new value given to the debtor; and
>>
>> (B) in fact a substantially contemporaneous exchange.

11 U.S.C. § 547(c)(1).  The Defendants bear the burden of proof on this defense.  11 U.S.C. § 547(g).  Therefore, to prevail on summary judgment, they must support their motion with evidence as to each element of the defense and show that the evidence is uncontroverted.  They have failed in two respects.

First, they must show that new value—in this case, additional service—was given in exchange for payment on existing debt.  The service that gave rise to the debt that was paid by the challenged transfer cannot be new value.  The exchange must be one in which the creditor renders new service in exchange for payment for previously rendered service.[1]  This serves the purpose of the exception, which is to encourage creditors to continue dealing with financially troubled debtors.  The Defendants have offered no evidence of this nature and made no attempt to correlate a given payment with *new* service given in exchange.  Instead, they contend that each payment was contemporaneous with the service *for which it was paying*, and that the service being paid for is the new value.  This is a misunderstanding of the defense.

Second, unlike the closely related defense in § 547(c)(4), which the Defendants do not invoke, this defense requires a showing of specific intent as to each transfer:  that the transfer was "intended by the debtor and the creditor to or for whose benefit the transfer was made to be a contemporaneous exchange for new value given to the debtor."  The Defendants have not addressed the element of intent.  In any event, specific intent, when disputed, is notoriously difficult to establish on summary judgment.  For these reasons, the Defendants are not entitled to summary judgment on the strength of their affirmative defense.

---

[1] Another way of putting this is that "contemporaneous exchange" in subsection 547(c)(1) is not the opposite of, and involves no negation of, antecedent debt in subsection 547(b)(2).  If the contemporaneous exchange in (c)(1) involved a negation of antecedent debt, the (c)(1) defense would not be an affirmative one.

5

Meddings also seeks summary judgment on this count on the alternate basis that it simply fails to state a claim against him. The Court agrees. The Court will grant summary judgment on this count, as against Meddings, because the Trustee has not alleged or adduced evidence that Meddings was a transferee of the transfers at issue. A trustee's right of recovery, upon avoidance of a transfer, is defined by § 550 of the Bankruptcy Code:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), and 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2) any immediate or mediate transferee of such initial transfer.

11 U.S.C. § 550(a). Lacking evidence or allegation that Meddings was a transferee, Meddings is entitled to summary judgment as to Count I.

**<u>Avoidance Counts as Against Meddings</u>**

The same reasoning applies to each of the six avoidance counts in the complaint—Counts I, II, IV, V, VI, and VII, which are brought variously under sections 544(b), 547, 548, and 549 of the Bankruptcy Code—insofar as they are asserted against Meddings. Under each, the Trustee must first establish a right of avoidance and then, under § 550(a), recover damages from a transferee of the avoided transfer. Meddings is not a transferee, and the Trustee has not articulated an alternate theory on which avoidance of a transfer could lead to a right to recovery against Meddings. Accordingly, the Court will grant summary judgment as to all six avoidance counts insofar as they are asserted against Meddings.

**Count II**

In Count II, the Trustee seeks under 11 U.S.C. § 547(b) to avoid and recover the value of transfers that occurred between ninety days and one year before the date of the filing of the involuntary petition as preferential transfers. Under subsection 547(b)(4)(B), a trustee may avoid transfers made between ninety days and one year before the petition date "if such creditor at the time of such transfer was an insider." 11 U.S.C. § 547(b)(4)(B). "Insider" is a defined term. Where, as here, the debtor is a corporation, "insider" includes (in relevant part) an "officer of the debtor" and a "person in control of the debtor." 11 U.S.C. § 101(31)(B)(ii) and (iii).

HMG seeks summary judgment as to this count on the basis that the Trustee cannot demonstrate that HMG was an insider at any time during the insider avoidance period. HMG contends that it never had or exercised control of the Debtor and, despite Meddings's formal appointment as "Chief Restructuring Officer" of the Debtor on August 15, 2003, was never in fact an "officer" of the Debtor within the meaning of § 101(31)(B)(ii).

The Court will deny summary judgment as to this count. First, the fact that Meddings was made "chief restructuring officer" raises a genuine issue of material fact as to whether he was in fact an officer. The Eighth Amendment of Forbearance Agreement describes the CRO's duties as including "assisting and advising the [Debtor] in the management of its operations and cash flow." Title is not everything, but it certainly is evidence that Citizens, Meddings, and the Debtor intended for Meddings to have the status of an officer of the Debtor. An officer is an insider without need to establish separately that he was a person in control. And an officer need not be the president, or have full powers of the president, in order to be an officer.

There is also evidence that even before his accession to the title of officer, he had a

7

significant role in the corporation.  There is evidence that Citizens had a great deal of leverage over the Debtor, and that HMG was hired because (a) Citizens insisted on the Debtor's hiring an approved turnaround consultant and (b) HMG was one of the consultants whom Citizens approved.  Meddings had authority to negotiate forbearance agreements with Citizens.  He had authority to report to Citizens on the Debtor's financial information, and both Citizens and the Debtor relied on him for that purpose.  Meddings himself testified that HMG served the purpose of "adding a layer of management to the company that the bank [Citizens] sees as a void."  Though he did not have the last word in many areas, he had authority to think, plan, and negotiate for the Debtor on matters of strategic importance.  Accordingly, the Motion for Summary Judgment will be denied as to Count II insofar as it seeks recovery from HMG.

**Counts III and IV**

Joseph Meddings seeks summary judgment as to Counts III and IV, insofar as they are asserted against him, on the basis that the complaint does not allege facts giving rise to a claim against him, and because there is no reason to impute to him any liability of HMG under these counts.  The Court agrees that judgment should enter for Meddings on these counts.  Count III seeks turnover of the $20,000 retainer, but the complaint does not allege, and the Trustee has not adduced evidence, that the retainer was paid to Meddings or is in his possession.  Count IV seeks to avoid a postpetition transfer of the same $20,000, but the complaint does not allege, and the Trustee has not adduced evidence, that the retainer was ever transferred to Meddings.  Accordingly, summary judgment shall enter on these counts for Meddings.

**Count V**

In Count V, the Trustee seeks to avoid as a fraudulent transfer the Debtor's payment on December 5, 2003, of $20,000 to HMG as a prepetition retainer for services to be rendered during the bankruptcy case. The basis of avoidance is 11 U.S.C. § 548(a)(1)(A), which requires proof that "the debtor" made such transfer with actual intent to hinder, delay, or defraud. 11 U.S.C. § 548(a)(1)(A). The complaint does not so allege; rather, it alleges only that, in accepting the payment, *HMG* acted with actual intent to hinder, delay, or defraud. The Defendants therefore contend, in essence, that Count V fails to state a claim on which relief can be granted.

In response, the Trustee states that HMG's intent should be imputed to the Debtor because HMG was in a position to control the disposition of the Debtor's property at the time. The Trustee contends that, although Frank Nappa did sign the check in question, he did so over his own objection.

The Court agrees with the Defendants that Count V fails to state a claim on which relief can be granted. In § 548(a)(1)(A), the relevant intent is that of the debtor. The complaint does not allege that the Debtor acted with the requisite intent. Accordingly, Count V fails to state a claim on which relief can be granted. The Trustee could perhaps move to amend Count V, but he has not done so.

Moreover, under the theory articulated by the Trustee in response to this motion, the Trustee would have to adduce evidence that HMG (a) caused the Debtor to make the transfer and (b) did so with intent to hinder, delay, or defraud a creditor. But the Trustee's response cites no evidence of either (a) or (b). Accordingly, there is no genuine of material fact, and the Defendants are entitled to summary judgment as a matter of law.

9

**Count VI**

In Count VI, the Trustee seeks under 11 U.S.C. § 548(a)(1)(B) to avoid as fraudulent transfers some thirty payments, totaling $180,009.22, that the Debtor made to HMG during the year before the commencement of the bankruptcy case. In order to prevail on this count, the Trustee must show that, in exchange for the payments, the Debtor received "less than a reasonably equivalent value." 11 U.S.C. § 548(a)(1)(B). The Defendants seek summary judgment on this count, arguing that the uncontroverted evidence shows that the Debtor received a reasonably equivalent value for the transfers. They cite evidence that HMG did provide consulting services to the Debtor; that, by agreement with the Debtor, negotiated at arm's length, HMG charged the Debtor its customary hourly rates for such services; and that it billed the Debtor for services rendered on a weekly basis, using invoices that accurately reflected the time HMG actually devoted to rendering services to the Debtor. They contend that the Trustee cannot point to any evidence that suggests that rates charged by HMG were excessive or that invoices submitted were fraudulent.

In response, the Debtor points to the fact that HMG's invoices merely stated the total number of hours worked; HMG has no detailed record, and can adduce no evidence, of the work actually performed and the time spent on each task. Citing *In the Matter of Hedstrom Corp.*, 333 B.R. 815, 821-24 (Bankr. N.D. Ill. 2005), the Debtor argues that in the context of professional consulting fees, the lack of meaningful invoices showing specific tasks performed is sufficient to support a claim that a professional's fees are not reasonable.

The Trustee's reliance on the *Hedstrom* case is misplaced. *Hedstrom* concerned the allowance of attorney's fees to a secured lender as part of its secured claim; there, under 11 U.S.C. § 506(b), the lender bore the burden of proving the reasonableness of the fees. In the

10

present matter, the burden of proof is not on HMG; rather, the Trustee bears the burden of proving that the services rendered were of less than a reasonably equivalent value to the payments made. The absence of detailed time records does not supply that proof. Nor has the Trustee adduced evidence of any kind in support of this necessary element of his case. Accordingly, as to Count VI, there is no genuine issue of material fact, and the Defendants are entitled to judgment as a matter of law.

**Count VII**

In Count VII, the Trustee seeks to avoid as fraudulent transfers the same thirty transfers as were at issue in Count VII, but he seeks to do so under the Uniform Fraudulent Transfer Act as adopted in Massachusetts, G.L. c. 109A, § 5(a)(2). Under this statute, too, the Trustee bears the burden of proving that the Debtor did not receive a reasonably equivalent value in exchange for the transfer. For the same reasons as are set forth above as to Count VI, the Defendants are also entitled to summary judgment on Count VII.

**Count VIII**

In Count VIII, the Trustee seeks to recover on a breach of contract theory, contending that HMG breached its management consulting agreement with the Debtor by (1) billing excessively and (2) providing no meaningful work summaries to show what management consulting services it may have provided. The Defendants make three arguments for summary judgment as to this count: first, that as against Joseph Meddings, the count must fail because he was not a party to the Debtor's agreement with HMG or to any agreement with HMG; second, that the failure to provide detailed work summaries is not a breach of contract because the

11

agreement between the Debtor and HMG did not require detailed work summaries; and third, as to whether HMG billed excessively, the uncontroverted evidence shows only that each of the invoices accurately reflected the amount of time actually spent providing services to the Debtor.

The first issue is whether Joseph Meddings can be liable for breach of the contract. The Debtor has adduced no evidence that Meddings was a party the agreement between HMG and the Debtor or to any other agreement with the Debtor. Nor has the Debtor offered any theory or explanation as to how Meddings can be liable for breach of a contract to which he was not a party. Summary judgment must therefore enter for Meddings on Count VIII.

The second issue is whether the contract required HMG to provide detailed time records of the work its employees performed for the Debtor. The agreement between HMG and the Debtor contains no requirement as to the level of detail required in HMG's record keeping and invoicing; it is simply silent on the issue. The Trustee cites no evidence of an oral agreement between the Debtor and HMG on this issue and indeed has offered no response to this argument at all. I therefore conclude that the Trustee has failed to establish a genuine issue of material fact on a necessary element of his claim as to the lack of detailed time records: proof that there existed a contractual obligation to maintain detailed records.

The third issue is whether the Trustee has shown the existence of a genuine issue of material fact as to whether HMG billed the Debtor, and received payment for, services in excess of those actually provided or otherwise billed excessively. The Trustee bears the burden of proving a breach of contract but has adduced no evidence that HMG did not provide the full amount of service for which it billed, or that HMG's hourly rates were excessive. The Trustee cites only certain deposition testimony by Frank Nappa, the whole of which is as follows: when asked, "Did you ever raise a question with [Meddings] at the time that the invoice was rendered,

12

about the hourly that he was charging?", Frank Nappa replied, "I had a couple of—I think I had a couple of conversations with him, and we were just going nowhere, so I said that let's forget it." This is the full extent of the Trustee's evidence. It does not indicate even what Nappa's questions were or what occasioned them. The Trustee's evidence falls far short of creating a genuine issue of material fact as to whether HMG overbilled for its services. Summary judgment shall enter for the Defendants on this count.

**Count IX**

In Count IX, the Trustee contends that the Defendants committed knowing and willful violations of Massachusetts G.L. c. 93A by (i) accepting the $20,000 retainer that the Debtor paid to HMG shortly before the bankruptcy filing, for services to be rendered after the filing, and by (ii) refusing to turnover to the Trustee, upon demand, $9,366.88 of this $20,000.00.[2] The Defendants seeks summary judgment as to this count on the basis that it is not an unfair or deceptive act or practice for a professional to accept a retainer from a debtor for postpetition services on the eve of bankruptcy. The Defendants do not challenge the second part of this count, where the gravamen is not acceptance of the retainer but refusal to turnover

The Court agrees with the Defendants that it is not an unfair or deceptive trade practice, within the meaning of G.L. c. 93A, for a professional to accept a retainer from a debtor, on the eve of bankruptcy, for services to be rendered during the bankruptcy case. The Trustee cites no authority to the contrary and articulates no argument for this proposition.[3] Accordingly, the

---

[2] Neither the complaint nor the Trustee's response to the motion for summary judgment explains the significance of the $9,366.88.

[3] From the Trustee's response to the motion for summary judgment, it now appears that the gravamen of the Trustee's cause of action is not simply that a professional accepted a

13

Defendant's motion will be granted as to Count IX insofar as it is predicated on mere acceptance of the retainer.

Joseph Meddings also seeks summary judgment as to this count on the basis that the complaint does not allege facts giving rise to a claim against him, and because there is no reason to impute to him any liability of HMG. The Court agrees that the complaint does not allege, and that the Trustee has not adduced evidence of, facts supporting a claim against Meddings under G.L. c. 93A. Meddings neither received the retainer nor refused to turn it over the Trustee on demand. These were actions of HMG. Therefore, summary judgment should enter for Meddings on Count IX.

**Core Proceedings?**

The Defendants argue that Counts VIII and IX are not core proceedings, and they do not consent under 28 U.S.C. § 157(c)(2) to this Court's entering final judgment as to counts that are not core. The Debtor argues that both counts are not core and has not indicated whether he consents to this Court's entering final judgment as to counts that the Court determines are not core. The Court holds that Count VIII, being a simple prepetition action for breach of contract, is not a core proceeding. Count IX is a not a core proceeding insofar as it seeks recovery on the basis of the simple act of accepting a prepetition retainer. However, to the extent that Count IX seeks recovery on the basis of a postpetition refusal to turnover the retainer to the Trustee, Count

---

prepetition retainer from the Debtor (though this is precisely what the complaint says). Rather, the gravamen appears to be that the retainer was accepted and, despite demand for turnover by the Trustee, retained by the professional *notwithstanding that the Debtor never sought or obtained approval for employment of the professional under 11 U.S.C. § 327(a).* As this cause of action is neither articulated clearly in Count IX of the complaint nor a subject of the motion to for summary judgment, the Court need not address the Count IX as articulated in the Trustee's response.

IX relates to the administration of the estate and therefore is a core proceeding, notwithstanding that the alleged basis of recovery is state law.[4]  28 U.S.C. § 157(b)(2)(A) and (E) (core proceeding include matters concerning the administration of the estate and orders to turnover property of the estate).

As to those matters which the Court has determined are not core proceedings, this Court may not enter final judgment.  At the close of the adversary proceeding, the Court must and will enter only proposed findings and rulings as to those matters, subject to review de novo in the District Court under 28 U.S.C. § 157(c)(2) and FED. R. BANKR. P. 9033.

**ORDER**

For the reasons set forth above, the Defendants' motion for summary judgment is granted with respect to all counts as to Joseph Meddings, granted as to Counts V, VI, VII, VIII, and IX (on the acceptance of retainer theory only) as against HMG, and denied as to Counts I and II as against HMG.  The Court further determines that Count VIII and the portion of Count IX that was determined by this order are not core proceedings.  The Court's rulings as to those counts only shall constitute proposed findings and conclusion under 28 U.S.C. § 157(c)(2), which the Court shall enter at the close of the adversary proceeding.

Date:  January 22, 2008                     /s/ Robert Somma
                                            Robert Somma
                                            United States Bankruptcy Judge

cc:  Heather J. Zelevinsky, for Plaintiff
     Richard M. Pierce, Esq., for Defendants

---

[4] I make no ruling at this juncture as to whether the obligation of turnover, which is governed by federal law, can be enforced with a remedy under state law.